# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC.; COTILLION MUSIC, INC.; TERRY STAFFORD MUSIC CO.; HOUSE OF CASH, INC.; WBM/HOUSE OF GOLD MUSIC, INC. d/b/a WARNER HOUSE OF MUSIC; POMMARD PUBLISHING CO.; SUNFLOWER COUNTY SONGS; UNIVERSAL – SONGS OF POLYGRAM INTERNATIONAL, INC.; SONY/ATV SONGS LLC d/b/a SONY/ATV TREE PUBLISHING, | |
| Plaintiffs, | No. C13-1038 |
| vs. | ORDER |
| MOONEY HOLLOW SALOON LLC d/b/a MOONEY HOLLOW SALOON/MOONEY HOLLOW BARN and KEVIN R. PETESCH, individually, | |
| Defendants. | |

On the 19th day of June 2014, this matter came on for hearing on the Motion to Set Aside Entry of Default and/or Default Judgment (docket number 19) filed by the Defendants on May 14, the "Opposition" (docket number 21) filed by the Plaintiffs on May 30, and the Reply (docket number 22) filed by the Defendants on June 4. The Plaintiffs were represented by their attorney, Jeffrey D. Harty. Defendant Kevin R. Petesch appeared in person and was unrepresented by counsel. Defendant Mooney Hollow

Saloon LLC, d/b/a Mooney Hollow Saloon/Mooney Hollow Barn, was unrepresented by counsel.[1]

## I. PROCEDURAL HISTORY

On December 9, 2013, Plaintiff Broadcast Music, Inc. ("BMI") and the other plaintiffs brought this action against Mooney Hollow Saloon LLC and Kevin R. Petesch, individually, alleging copyright infringement. According to the complaint, BMI has been granted the right to license the public performance rights in approximately 7.5 million copyrighted songs. The remaining plaintiffs are owners of the copyrights of the songs which are the subject of this lawsuit.

According to the complaint, Mooney Hollow Saloon, LLC ("Mooney Hollow") is a limited liability company which operates the Mooney Hollow Saloon/Mooney Hollow Barn. Plaintiffs assert that Defendant Kevin R. Petesch is the president of Mooney Hollow, with primary responsibility for the operation and management of the company. Plaintiffs claim they are entitled to damages as a consequence of Mooney Hollow's unauthorized public performance of the copyrighted material.

On March 26, 2014, Plaintiffs filed two proofs of service, stating that Defendants were personally served on March 22, 2014. *See* docket numbers 8 and 11. On May 9, Plaintiffs filed a motion for entry of default, stating Defendants had not filed an answer or other responsive pleading, and the time for doing so had expired. The Clerk of Court then docketed a default entry.

On May 14, Defendants filed the instant motion to set aside entry of default, claiming they were not properly served under the FEDERAL RULES OF CIVIL PROCEDURE.

---

[1] As the Court explained at the time of hearing, a corporation may only be represented in federal court by a licensed attorney. *Ackra Direct v. Fingerhut*, 86 F.3d 852, 857 (8th Cir. 1996).

2

This case has been assigned to Judge Edward J. McManus. However, a magistrate judge may hear and determine motions to set aside an entry of default. *See* Local Rule 72.c(10).

## II. RELEVANT FACTS

### A. Prior Attempts of Service

According to "affidavit[s] of non-service" filed with the Court, Plaintiffs made numerous attempts to have Defendants served. One process server (Christine Schaefer) claims that she spoke to Petesch on the phone on December 17, but he was "very hesitant" and was unavailable until after Christmas. Petesch testified under oath at the hearing that he did "not recall" any phone call on that date. The same service provider claimed that on December 28 she saw Petesch backing out of his driveway, she had to move to get out of the way, she rolled her window down and waved at him, but he stared straight ahead and ignored her. Petesch testified that "I do not remember a person that pulled in my driveway that rolled down a window." Petesch also added that "I live in a small town and everyone waves at everyone."

On January 21, 2014, a different process server (Douglas Potter) went to Petesch's home, but when no one answered he proceeded to a nearby Casey's store, where Petesch's daughter was employed. According to the affidavit of non-service, Petesch's daughter initially offered to walk the process server over to her dad's residence, but then did not follow through. Petesch admitted at the hearing that his daughter was approached at her place of work and "questioned by some guy that wanted to talk to me," but according to Petesch he thought it was a salesman and he "didn't think much about it."

However, when Petesch heard from others that "someone was trying to make contact with me," he got on the internet and discovered that he had been sued in this case on December 9, 2013. According to Petesch, he contacted an attorney on January 30, 2014, "to find out more information on this case." Petesch testified that his attorney called

3

BMI's attorney on February 5 and left a message seeking additional information.[2] On February 24, BMI's attorney allegedly made an offer to Petesch's attorney to settle the lawsuit. Petesch's attorney responded on March 12, but did not receive any further reply.

Meanwhile, Plaintiffs apparently continued their efforts to have Defendants served. According to a proof of service filed by James Hodges, he attempted to serve Defendants on February 4, but Petesch "consistently evaded service." In mid-March, Hodges returned to the area, accompanied by Christine Arey, in an attempt to perfect service.[3] According to Hodges, he went to Petesch's home, where he observed Petesch leave in his vehicle. Hodges followed Petesch to the home of his brother, Wayne Petesch. Hodges testified that Petesch was "driving very recklessly and speeding highly."

According to Hodges, when Petesch arrived at his brother's home, he "jumped" out of his vehicle and walked "very very fast" into his brother's residence, with Hodges "chasing right behind [Petesch] and asking [Petesch] to stop." At that time, Petesch was wearing a black work jacket and "hoodie." According to Hodges, Petesch slammed the door in his face. Hodges knocked on the door and about three minutes later, Petesch's brother, Wayne, emerged wearing Petesch's jacket. Hodges testified that Wayne was shorter and less stocky than Petesch, and Hodges knew that Wayne was not the one he had seen driving the vehicle. According to Hodges, he pulled up close enough during the chase to see the driver on his cell phone.

Hodges testified that he asked Wayne if Petesch was present and Wayne said "no." Hodges asked Wayne if he knew where Petesch was and Wayne said "no." When Hodges

---

[2] Attached to Plaintiffs' resistance is a copy of an email from attorney Brett Papendick to Jeffrey D. Harty, dated February 10, 2014, referring to a voicemail left "last week."

[3] While the date is imprecise, Hodges testified that it was several days prior to March 22, when it is claimed that service was finally perfected.

4

asked Wayne about the person who had just gotten out of the vehicle and gone into the house, Wayne told Hodges that he was the one driving the vehicle. Hodges asked Wayne for identification and Wayne produced identification showing he was Edwin "Wayne" Petesch. When Hodges asked Wayne if he knew that Hodges had been following Petesch the entire way, Wayne "started to giggle and chuckle a little bit" and said "well, yes." Hodges testified that although he knew Petesch was in Wayne's house, he had no way to get Petesch to come out, so he and his partner left. They proceeded to the Dubuque Police Department, where Hodges reported Petesch's reckless driving.

Wayne Petesch also testified at the hearing and had a different version of the events. According to Wayne, he saw a car with two people in it pull into his driveway and park so that nobody could get in or out. The driver then got out and "ran up the driveway somewhere between a run and a jog." When the driver started to enter the gate, Wayne went out and confronted him. According to Wayne, the driver (who was presumably Hodges) said "it's a good thing you opened that door or I was going to break it down."

According to Wayne, Hodges asked "are you Kevin Petesch?" and Wayne answered "no." Hodges asked if Wayne could show him some ID, and Wayne said yes, but told Hodges to go to the other side of the gate, and Hodges complied. Wayne showed Hodges his ID and, according to Wayne, "I never seen a guy get so apologetic in his life." Wayne testified that Hodges never approached the door and did not ask if Petesch was inside the house. Wayne first testified that Hodges "had some stuff in his hand," which he dropped and picked back up. Wayne later denied, however, that Hodges showed him any "paperwork."

### B. March 22, 2014

On March 24, 2014, James Hodges signed a proof of service declaring, under penalty of perjury, that he personally served Kevin Petesch and Mooney Hollow on March 22, 2014. *See* Plaintiffs' Exhibits 1 and 2. Hodges testified that he is a licensed private

5

investigator in Iowa and is employed by Five Star Investigations. Accompanying Hodges on that date was Christine Arey, who is also licensed as a private investigator and employed by the same company.

At the hearing, Hodges testified regarding the events of that day. According to Hodges, he first stopped at the Bellevue Police Department to advise them that he was going to Petesch's residence to effect service and intended to block the driveway, so Petesch could not "exit the area." Hodges and Arey parked at the entrance to Petesch's driveway, blocking Petesch's vehicle and another vehicle which was present. They then went to the front door of the residence and knocked. When they did not receive any response, they went around to the side of the house, to a sliding glass patio door which opened on a kitchen area. Hodges knocked on the door several times, gaining the attention of "what sounded like a large bird inside the area." (Petesch testified that he has a parrot.) Petesch then came to the door and opened it. Hodges asked if he was Kevin Petesch, and Petesch said he was. Hodges then handed Petesch the summons and a copy of the complaint. Petesch then slammed the glass door closed, and Hodges and Arey left the area. Arey testified consistently with Hodges. According to Aery, she was in a position to actually see Hodges physically hand the papers to Petesch.[4]

Petesch flatly denies that he was served by Hodges on March 22. According to Petesch, he has never met Hodges, he never opened any sliding door, and was not given any suit papers by Hodges. Petesch testified that he and his wife left home sometime in

---

[4] On cross-examination, Petesch asked Aery whether he "look[ed] this size" when the papers were served on March 22. Aery responded "yeah." Petesch then represented to the Court that "I lost 45 pounds since March 22nd." After a recess was taken, Petesch called Hodges back to the stand and asked "do I look the same?" Hodges responded "no, actually you look about 60 pounds lighter." Petesch later advised the Court that he had lost 45 pounds under a program sponsored by the VA and "probably a good 25 to 30 of those pounds since March 22nd. Actually, maybe even more."

the afternoon on March 22 and went to Mooney Hollow to prepare for a dance that night. He did not return home until 1:00 a.m. The next day, a neighbor delivered the suit papers to Petesch, saying she had found them on Petesch's lawn.

Petesch acknowledged that he read the papers after they were given to him by his neighbor. The summons advised Petesch that "[a] lawsuit has been filed against you." The summons further instructed that "[w]ithin 21 days after service of this summons on you . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure." After consulting the internet, however, Petesch concluded that service had not been properly perfected on him and, therefore, he decided that no responsive pleading was required.

## III. DISCUSSION

If a party who has been properly served fails to file a timely answer or other responsive pleading, then the clerk must enter the party's default. FED. R. CIV. P. 55(a). Here, Petesch argues the default was improperly entered because he was not properly served. As applicable to this case, service may be perfected by delivering a copy of the summons and complaint to Petesch personally. FED. R. CIV. P. 4(e)(2)(A). If Hodges handed the suit papers to Petesch — as claimed by Plaintiffs — then service was properly perfected.[5] On the other hand, if Hodges simply left the papers at Petesch's residence when no one was home — as claimed by Defendants — then proper service was not perfected. If the Court finds service was *not* perfected on Defendants, then Plaintiffs

---

[5] A corporation may be served by delivering a copy of the summons and complaint to an officer or other authorized agent of the corporation. FED. R. CIV. P. 4(h)(1)(B). Here, Petesch does not claim that he is not authorized to receive service on behalf of Mooney Hollow Saloon, LLC.

7

concede that the default entry must be set aside. If Defendants *were* properly served, then the entry of default may be set aside upon a showing of good cause. FED. R. CIV. P. 55(c).

This is an unusual case. In my nearly 28 years as a judge, I cannot recall a time when the testimony of the witnesses was more diametrically opposed. The testimony of James Hodges and the testimony of Kevin Petesch cannot be reconciled. One or the other committed the crime of perjury. *If* Hodges perjured himself, then so did Christine Arey. If proven, both would lose their license to act as a private investigator in Iowa. On the other hand, Petesch, who apparently served 25 years in the Air Force (retiring as a lieutenant colonel) flatly told the Court that "I don't lie."

It is apparent to the Court that Petesch was doing what he could to avoid being served with the suit papers. I believe Petesch was initially contacted about the lawsuit by a process server in December 2013, although he testified he could "not recall" any phone call on that date. It is undisputed that Petesch knew about the lawsuit not later than mid-January 2014, when a different process server talked to Petesch's daughter at her place of employment. Petesch admits that he subsequently looked on the internet and discovered he had been sued by BMI on December 9, 2013. Petesch contacted an attorney on January 30, 2014, and there were apparently some efforts to settle the case.[6]

I also believe that during the week prior to March 22, 2014, Hodges followed Petesch from his home to the home of his brother, Wayne Petesch. Wayne's testimony at the hearing confirmed that when Hodges arrived at Wayne's home, Kevin Petesch was inside. It is undisputed that Wayne went outside and met with Hodges. It strains credulity to believe that Petesch was inside the home and did not know that Hodges was outside, or

---

[6] The record is silent whether Plaintiffs' attorney asked Petesch's attorney at that time if Defendants would simply accept service.

the purpose of Hodges' appearance at Wayne's residence. At the time of hearing, Petesch told the Court that "I was taught to run toward problems, not away." Clearly, Petesch did not run toward the problem that day, electing instead to continue the cat-and-mouse game and hide inside the house.

The facts of March 22, however, are not without dispute. It would seem there are two possibilities. Either Hodges grew tired of Petesch's continued efforts to avoid service and simply left the suit papers at the residence, or Petesch was served with the papers and then left them outside for his neighbor to find. If it was the former, then Petesch was not properly served and the default entry must be set aside. If it was the latter, then service was perfected and the Court must consider whether good cause exists to set aside the default entry.

The Court may set aside an entry of default for good cause. FED. R. CIV. P. 55(c). "When examining whether good cause exists, the district court should weigh 'whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused.'" *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). In applying this standard, the Court focuses heavily on the blameworthiness of the defaulting party. *Johnson*, 140 F.3d at 784.

*If* Petesch was properly served, then the first factor — blameworthiness — weighs against setting aside the default entry. Petesch admits he read the summons and understood he had 21 days after service in which to file an answer or other responsive pleading. According to Petesch, he did not file an answer because he concluded he had not been properly served. His reasoning in this regard is dependent, however, on his version of the facts. That is, if Hodges is telling the truth and Petesch is lying, then he clearly understood that an answer was required within 21 days.

The second factor — meritorious defense — also weighs against setting aside the default entry. It does not appear Mooney Hollow has a meritorious defense. It is apparently undisputed that Mooney Hollow did not have a license from BMI, and it is likely that Plaintiffs will be able to prove that copyrighted songs were publicly performed. Rather, the issue appears to be one of damages. It is less clear whether Petesch, individually, has a meritorious defense.

The third factor weighs in favor of setting aside the default entry. That is, there is no real prejudice to Plaintiffs by requiring them to proceed on the merits. *Johnson*, 140 F.3d at 785 ("[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits."). Moreover, there is a "judicial preference for adjudication on the merits." *Id.* at 784 (quoting *Oberstar v. FDIC*, 987 F.2d 494, 504 (8th Cir. 1993)).

Given the nature of the testimony at the time of hearing, the Court concludes that Plaintiffs are unable to prove that service was perfected on Defendants on March 22, 2014. In reaching that conclusion, the Court makes no judgment regarding whether Hodges and Arey perjured themselves on the one hand, or Petesch perjured himself on the other. Rather, the Court finds that the evidence is in equipoise and, therefore, the burden of proof has not been met. Accordingly, the Court finds that the default entry should be set aside.

At this point, Kevin Petesch has appeared and is required to file a timely answer or other responsive pleading. The Court finds that Mooney Hollow must also timely respond to the complaint.

## ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion to Set Aside Entry of Default (docket number 19) filed by Defendants is **GRANTED**.

2. The Entry of Default docketed on May 9, 2014 is **SET ASIDE**.

3. Defendants must file an answer or other responsive pleading not later than **July 15, 2014**.

4. Defendants are reminded that a corporation may only be represented in federal court by a licensed attorney. That is, Kevin Petesch may **not** appear on behalf of Mooney Hollow. If an attorney fails to appear on behalf of Mooney Hollow, then it will be in default.

DATED this 30th day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA